STATE *ex relatione* JOHN E. GOLDSWORTHY *vs.* WILLIAM D. ALDRICH.

In the Constitution of Rhode Island, article 2, sections 1 and 2, the word "residence" means domicil or home, not the place of actual habitancy.

Hence, when a qualified citizen had his domicil in the town of L., but for temporary purposes was residing in another town :

*Held*, that he had the right to vote in the town of L.

Domicil is not changed by mere change of habitancy without an intent to change the domicil.

QUO WARRANTO. On demurrer to the answer.

*May* 31, 1883. DURFEE, C. J. This is an information in the nature of a writ of *quo warranto* to oust the respondent from the office of town councilman of the town of Lincoln, on the ground that when elected, to wit: on June 5, 1882, he was not eligible to the office, under the Constitution, article 9, section 1,[1] because he was not then a qualified elector to such office. The information alleges as a reason why he was not a qualified elector, that he did not reside in the town of Lincoln, but, on the contrary, resided in the city of Providence, and had had his residence and home in said city for more than five years next before said fifth of June, 1882. The answer, which is demurred to, alleges that the respondent was born in the town of Smithfield in 1833, and lived there continuously until 1871, when a portion of the town, includ-

---

[1] As follows : No person shall be eligible to any civil office (except the office of school committee) unless he be a qualified elector for such office.

ing his residence and home, was set off by the General Assembly as and for the town of Lincoln.   The answer also alleges that the respondent was a qualified elector of the town of Lincoln at the time of its incorporation, and that he claims to have remained such ever since then ; that his name has been on the voting list in said town ever since then ; that he has paid taxes assessed against him by said town on his real estate since 1871, and on personal property since 1880, and that he has never been assessed for personal estate in any other town or city.   The answer also alleges that the respondent has never had his name on the voting list, nor attempted to exercise any political rights in any other town or city ; and that on the contrary he has voted in the town of Lincoln every year since 1871, and that in 1880, and again in 1881, he was elected a town councilman of said town, and reëlected June 5, 1882, his name being then on the voting list.   The answer, how-, ever, admits that in 1875 the respondent, being advised that the health of his wife required a change, removed her to the city of Providence with a portion, about two thirds, of his furniture, and there furnished a tenement of four rooms for their convenience, hiring the same by the month ; that there his wife immediately put herself under medical treatment, being so feeble that he remained with her at night and employed an attendant to be with her by day ; that he went to New York with her for a month for medical treatment, and during the summer months of each year visited various places for the benefit of her health, and that her illness was so protracted that he was unable to return with her to Lincoln until June 5, 1882.   But the answer further alleges that, during all this time, the respondent, owning a dwelling house in the town of Lincoln, let only a part of it, and reserved the other part, five rooms, for his own use, keeping there the furniture not carried to Providence, so that he could resume house keeping there whenever his wife should be able to return ; that he is a land surveyor, and has had his only place of business in the yard of his house in Lincoln for eleven years last past ; that during the illness of his wife in Providence he continued to carry on his business in Lincoln, going there in the morning and returning at night ; that he kept and cultivated his garden in Lincoln ; that he went to Providence to live, temporarily, solely for the sake of his wife,

intending to return as soon as she was well enough to return; that he did return June 5, 1882, and that he never had any intention or thought of changing his residence and home from Lincoln to any other town or city. The answer contains other allegations, which, being merely incidental or confirmatory, we deem it unnecessary to recite. We think it is clear from the answer that the respondent, while he changed his place of actual abode, did so simply for a temporary purpose without intending to change his domicil, and that he therefore did not change it, since a man does not acquire a new domicil, without an intent to do it, by a mere change of habitation. *White* v. *Brown,* 1 Wall. C. C. 217, 262, 263; *Hodgson* v. *De Beauchesne,* 12 Moore P. C. C. 285; *Harvard College* v. *Gore,* 5 Pick. 369; *Horne* v. *Horne,* 9 Ind. 99; *Folger & Son* v. *Slaughter et als.* 19 La. An. 323; *Udny* v. *Udny,* L. R. 1 Scotch & Div. App. 441, 448; also 4 Amer. Law Review, 678.

The question is, whether the respondent, under the circumstances, lost the right to vote in the town of Lincoln which he had, beyond controversy, previous to 1875. The Constitution creates two classes of electors.[1] The first class includes " every male citizen of the United States, of the age of twenty one years, who has had his *residence* and *home* in this State for one year, and in the town or city in which he may claim a right to vote, six months next preceding the time of voting," provided that he also has the freehold qualification prescribed by article 2, section 1, of the Constitution. The second class includes " every male native citizen of the United States of the age of twenty-one years," who, being otherwise qualified under article 2, section 2, of the Constitution, has had his " residence " in this State two years, and in the town or city in which he may offer to vote, six months next preceding the time of voting. The prosecutor contends that, after 1875, the respondent ceased to have his residence in the town of Lincoln, and that he did not have it there for the six months next preceding June 5, 1882, and consequently that he was not then an elector in that town. He contends that the word " residence," as used in said sections 1 and 2, means, not domicil or home simply, but a place of actual habitancy or abode.

---

[1] Constitution of Rhode Island, article 2, sections 1 and 2.

It is true, without doubt, that the word "residence" sometimes has the meaning which the prosecutor contends for, the word being sometimes used to denote mere habitancy as contradistinguished from domicil or home. But it is also true that the word is frequently used as a synonym for domicil or home. What the word means in said sections 1 and 2 is, therefore, a matter for interpretation or construction. The Constitution of Massachusetts confers the right of voting on every citizen who, being otherwise qualified, "shall *have resided* within the commonwealth one year, and within the town or district in which he may claim a right to vote, six calendar months." The judges of the Supreme Judicial Court of Massachusetts, construing this provision, held that the words "shall have resided" meant the same as "shall have had his dommicil or home," and that, therefore, a student, residing at a public institution for the purposes of education, had no right to vote in the town where the institution was, though he had been there more than a year, unless his domicil was there. 5 Met. 587. And so the words "having resided," used in the Constitution of Pennsylvania, in the section conferring the right to vote, have been construed to mean the same as "having had his domicil or home." *Fry's Election case,* 71 Pa. St. 302. We are inclined to think, from such information as has casually come to us, that our Constitution has generally been construed by the boards of canvassers, whose duty it is to canvass the voting lists of the several towns, in the same manner. In such a matter a long continued practical construction is entitled to consideration. Moreover, the construction contended for by the prosecutor, if adopted, would lead to very embarrassing results. There are voters who have two houses in the State in different towns; one for summer residence, and the other for the rest of the year. Under the prosecutor's construction, such a voter, returning from his summer abode, would be disqualified from voting in the town to which he returned, for the next six months. There are voters, too, who have summer residences out of the State; such voters, on returning home to this State, would be disqualified from voting for a year at least, and, if they were simply personal property voters, for two years. Again, applying the construction to section 1, a voter, having merely a freehold qualification, whose home happened to

be in one town and his temporary abode in another, would be disqualified from voting in either. A construction which leads to such results is not to be adopted, if another construction which avoids them is admissible. The prosecutor argues from the fact that in section 1, and in the first clause of section 2, which confers a temporary right of voting, the language is, not "residence" alone, but "residence and home," that the words "residence" and "home" were not meant to be understood as synonymous, but rather as having different meanings, supplemental to each other. We are not much impressed by this argument. On the contrary, we think it more reasonable to infer from the omission of the word "home" in the second and more important clause of section 2, that the word was used in section 1, and the first clause of section 2, simply by way of emphasis, and not to add a further qualification; for we cannot conceive of any reason for any discrimination between the two classes of voters; nor any reason why, if there was any discrimination intended, it should have been a discrimination against the real estate voters, and in favor of the personal property or registry voters.

Our conclusion is that the word "residence," used in the Constitution in the two sections above cited, was there used as equivalent to "home" or "domicil," and was not intended to be understood in the restricted sense of actual habitation or abode. The demurrer is therefore overruled. *Demurrer overruled.*

*Stephen A. Cooke, Jun.,* for relator.

*Charles H. Parkhurst & John P. Gregory,* for respondent.